**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEMKO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 03283 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| FEDERAL INSURANCE COMPANY, and | ) | |
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, the plaintiff, Lemko Corporation, seeks to impose a duty to defend on two of its liability insurers with respect to a lawsuit filed against Lemko by Motorola, Inc., that has since settled. Lemko, a cellular technology company and competitor of Motorola, was sued for a range of torts and civil statutory violations stemming from the alleged theft of copyrighted material and other confidential information by Motorola employees who were also working (allegedly) for or on behalf of Lemko. The defendant insurers declined coverage, concluding that their policies either did not provide or expressly excluded coverage for the events at issue in the Motorola lawsuit. All parties have now moved for partial or total summary judgment as to their liability. For the reasons that follow, Lemko's motion is denied, and the insurers' motions are granted.

## FACTS

Motorola first brought suit against Lemko and five individuals on September 23, 2008. Compl., Dkt. # 1, N.D. Ill. Case No. 08 C 5487. The complaint was amended three times; the third amended complaint (TAC) of July 16, 2010, contains largely the same substantive claims against a total of 16 defendants. The TAC sets forth nineteen counts seeking relief under the

following theories: (1) violation of the Computer Fraud and Abuse Act; (2) misappropriation of trade secrets; (3) breach of fiduciary duty; (4) usurpation of corporate opportunity; (5) patent ownership; (6) breach of contract, namely, employment agreements; (7) tortious interference with contract; (8) fraudulent concealment; (9) spoliation of evidence; (10) copyright infringement; and (11) civil conspiracy. TAC, Dkt. # 473, N.D. Ill. Case No. 08 C 5487. All of these counts are based on the same underlying facts—namely, the accessing of Motorola computers without authorization, or in excess of existing authorization, to obtain Motorola's trade secrets and confidential information, including source code, and their transfer to Lemko, during a period running from approximately 2002 to 2007.

When it was sued by Motorola, Lemko turned to its insurers for coverage—to Federal beginning with the original complaint, and to Cincinnati beginning with the Second Amended Complaint. Each denied Lemko's claim. Lemko entered into a standstill agreement with Cincinnati but not Federal; Federal, however, did not seek a declaratory judgment regarding its duty to defend, nor did it defend under a reservation of rights.

<u>**The Policies**</u>

**A.    Cincinnati Commercial General Liability and Umbrella Policy**

Under the Cincinnati CGL policy, Lemko has coverage for "bodily injury and property damage liability" during the policy period.[1] The coverage applies to the extent Lemko is liable to pay damages because of "bodily injury" or "property damage" that occurs during the policy period and that is "caused by an 'occurrence' that takes place in the 'coverage territory.'" An "occurrence," under the policy, is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." And "property damage" is defined as:

---

[1] The policy period for the Cincinnati policy was December 1, 2003, to September 19, 2005 (when Lemko cancelled the coverage before the three-year term was up).

a. Physical injury to all tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

The property damage coverage is subject to an exclusion for "expected or intended injury," namely: "'property damage' which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended."

The same Cincinnati policy also covers Lemko for "personal and advertising injury liability." The coverage applies to such injuries committed in "the coverage territory" during the policy period, and "caused by an offense arising out of your business." Personal and advertising injury is injury arising out of, *inter alia*: "infringing upon another's copyright, trade dress or slogan in [the insured's] 'advertisement.'" And, in turn, an "advertisement" is defined as:

a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. 'Advertisement' includes a publicity article. For purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement."

As relevant in this case, the advertising injury coverage is subject to three exclusions— for "knowing violation of rights of another," for "breach of contract," and for "infringement."

The first of these exclusions applies to "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" The second excludes coverage for injury "arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" Finally, the coverage does not apply to "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights"; except that "this exclusion does not apply to infringement, in your 'advertisement' of copyright, trade dress or slogan."

      **B.**      **Federal General Liability Policy and Excess and Umbrella Policy**

Lemko's coverage under its Federal CGL and Excess and Umbrella policies also extended to "bodily injury or property damage caused by an occurrence" during the policy period.[2] And as with the Cincinnati CGL policy, under the Federal CGL policy an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same harmful conditions." "Property damage" is defined as follows:

> physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> Tangible property does not include any software, data or other information that is in electronic form.

---

[2] The applicable policy periods for the Federal policies are: (1) Policy No. 6802-5852 (D&O), effective September 19, 2008 to September 19, 2009; (2) Policy No. 3583-41-23 (CGL) effective from September 19, 2005 to September 19, 2008; and (3) Policy No. 7982-24-51 (Excess and Umbrella), effective from September 19, 2005 to September 19, 2008.

Lemko also had coverage for liability for "advertising injury," caused by "an offense that is first committed during the policy period." "Advertising injury" is defined in the Federal CGL policy as "injury . . . sustained by a person or organization and caused by an offense of infringing, in that particular part of your advertisement about your goods, products, products, or services upon their copyrighted advertisement or registered collective mark, registered service mark or other registered name, slogan, symbol, or title." And, an "advertisement" means "[a]n electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services," but not "any e-mail address, Internet domain name or other electronic address or metalanguage."

As relevant to this case, the Federal CGL policy contained three exclusions to the type of coverage Lemko is invoking. First, as to both property damage and advertising injury, the policy contains an intellectual property laws or rights exclusion for injuries "arising out of, giving rise to or in any way related to any actual or alleged assertion; or infringement or violation; by any person or organization (including any insured) of any intellectual property law or right, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation" except that the exclusion does not apply if the injury "is caused by an offense described in the definition of advertising injury; and does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any intellectual property law or right, other than one described in the definition of advertising injury."

Second, the "Expected Or Intended Exclusion" bars coverage for property damage or advertising injury arising out of an offense, committed by or on behalf of the insured, that is

"intended by the insured; or would be expected from the standpoint of a reasonable person in the circumstances of the insured" to cause property damage or advertising injury. Third, the "Crime or Fraud" exclusion bars coverage, solely with respect to advertising injury, to the extent the injury "aris[es] out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the insured."

C.     **Federal Directors & Officers Policy**

Finally, Lemko had D&O liability coverage for losses (including liability for damages and settlements) caused by "wrongful acts" The policy defined wrongful acts as:

> (1) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:
>
> (a) For purposes of coverage under Insuring Clauses (A) and (B): any Insured Person in his or her capacity as such, or any matter claimed against any Insured Person solely by reason of his or her status as such;
>
> (b) For purposes of coverage under Insuring Clause (C): any Insured Organization; or
>
> (c) For purposes of coverage under Insuring Clause (D): any Executive; or
>
> (2) any Outside Capacity Wrongful Act.

The D & O policy also contained the following exclusion: "[N]o coverage will be available under the Coverage Section identified above for any Claim against an Insured based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets."

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1129 (7th Cir. 2012). In

this case, the parties agree that no disputes of fact exist; the sole question is whether, as a matter of law, either insurer has a duty to defend Lemko with respect to the Motorola lawsuit.

The parties agree that this question is governed by Illinois law, under which the Court must compare the allegations in the underlying Motorola complaint with the express language in the insurance policies to determine whether the insurers' duty to defend has been triggered. *See Northfield Ins. Co*., 701 F.3d at 1129*; Pekin Ins. Co. v. Wilson*, 930 N.E. 2d 1011, 1016-1017 (Ill. 2010); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Pekin Ins. Co*., 930 N.E. 2d at 1017. An insurer may justifiably refuse to defend the insured only if it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *Northfield Ins. Co*., 701 F.33d at 1129 (quotation marks and citations omitted).

"Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms." *Schuchman v. State Auto Property & Casualty Ins. Co.*, 733 F.3d 231, 235 (7th Cir. 2013) (quotation marks and citation omitted). *See also, e.g., Koloms*, 687 N.E.2d at 75. But if the terms of the policy are susceptible to more than one meaning, despite application of the standard tools of textual interpretation, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Schuchman*, 733 F.3d at 238; *Koloms,* 687 N.E.2d at 75. Furthermore, "[a] court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.*

Before the question of coverage can be answered, there is the threshold issue of whether Federal is estopped from raising any policy defenses in this lawsuit due to its failure to either

defend Lemko under a reservation of rights or to seek a declaratory judgment that it had no duty to defend. (Lemko does not argue estoppel as to Cincinnati, with which it entered a standstill agreement.) Lemko contends that the Court must ignore Federal's coverage arguments, whereas Federal contends that Lemko takes an overly broad view of estoppel and that, because it correctly denied coverage, estoppel does not apply.

Under Illinois law, an insurer that breaches the duty to defend is estopped from raising policy defenses to coverage. *Employers Ins. of Wausau v. Ehlco Liquidating Tr.,* 708 N.E.2d 1122, 1132 (Ill. 1999). The insurer has two options: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id*. at 1134-35. "If the insurer fails to take either of these steps *and is later found to have wrongfully denied coverage*, the insurer is estopped from raising policy defenses to coverage." *Id.* at 1135 (emphasis added). As the italicized clause shows, then, estoppel is triggered only upon a finding that coverage was wrongfully denied. "If the insurer has no duty to defend because it was not given an opportunity to defend, there was no insurance policy in existence, or there was no coverage or potential for coverage, the estoppel doctrine does not apply." *Hunt v. State Farm Mut. Auto. Ins. Co.*, 994 N.E. 2d 561, 566 (Ill. App. Ct. 2013); *West American Ins. Co. v. Midwest Open MRI, Inc.*, 989 N.E.2d 252, 261 (Ill. App. Ct. 2013) ("Thus, whether estoppel applies necessarily depends on whether the insurer had and breached a duty to defend."). At this point in the case, we have only Lemko's allegation of a breach of the duty to defend—no "finding." Therefore, the Court may consider Federal's policy defenses in analyzing whether there was a duty to defend. Of course, the duty to defend applies not only where the policy provides coverage, but where it *potentially* provides coverage. Therefore, there is somewhat more risk to Federal in having simply refused to defend, but that choice does not preclude Federal from contesting Lemko's duty to defend claim.

In this case, Lemko claims that both insurers' CGL and umbrella policies, which covered "property damage" liability and "advertising injury" liability, apply to its costs of defending the Motorola lawsuit. (Lemko does not seek indemnification for the settlement amount.) Lemko further argues that Federal's D & O policy covers those costs under its "wrongful acts" provision. The insurers each argue that there is no coverage under their policies for the events that are set forth in the Motorola pleadings, and further, that the policies affirmatively exclude coverage.

### A.     Property Damage Liability

As set forth above, both insurers' CGL policies cover liability for "property damage," similarly defined, and the same analysis applies to both. To prevail against either insurer based on these policies, Lemko must show that the Motorola complaint alleges that during the applicable policy period, Motorola suffered "physical injury to tangible property" or "loss of use of tangible property that is not physically injured," caused by an "occurrence." Cincinnati argues that coverage does not apply under the plain language of the policy. Both insurers also argue that the exclusion for "expected or intended injury" precludes coverage.

Cincinnati contends that the Motorola complaint does not allege any property damage, and it points in particular to Lemko's answers to contention interrogatories asking which specific allegations in the Motorola complaint arguably pertained to "property damage." Lemko identified 32 paragraphs from the TAC, but the Court agrees with Cincinnati that all but three of those paragraphs plainly do not allege property damage.[3] The three remaining paragraphs (¶¶ 55,

---

[3] Paragraphs 140, 147, 154, 160, 167, 174, 188, 204, 221, 231, 242, 254, 265, 275, 282, 290, 303, 315, and 338 of the TAC contain no independent factual allegations; they simply re-incorporate previously alleged facts. Paragraphs 60, 61, 64, 65, 66, 67, 86, 88, and 89 are similarly irrelevant; they include only allegations of facts about events that occurred after the

59, and 144) are the sole foundation for the property damage argument Lemko advances in its own summary judgment motion and its response to Cincinnati's motion. Lemko's case for "property damage" coverage depends solely on allegations that in accessing Motorola's computers to obtain and transfer trade secrets and confidential information, the Lemko defendants "knowingly and recklessly caus[ed] damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information *and the Motorola protected computers*." *See* Motorola TAC ¶¶ 54, 59 (emphasis added). The final allegation (which appears only within a count of the complaint that Lemko successfully had dismissed for failure to state a claim) similarly states that at an unspecified time, and as a result of the unauthorized access and transmission of data, "defendants . . . intentionally and without authorization, recklessly caused damage and loss to the secure protected computers of Motorola and/or other protected computers)." TAC ¶ 144.

Lemko argues that because "property damage" includes "loss of use of tangible property that is not physically injured," the Motorola complaint's allegations that the "integrity and/or availability" of "computers" was "impair[ed]," or that "protected computers" suffered "damage and loss" constitute allegations of "property damage." But while the TAC does claim that the actions of several defendants "impair[ed] the integrity and/or availability of .... the Motorola protected computers," (¶¶ 54, 59, 144), the statement is an empty conclusion that merely parrots the CFAA statutory requirement of intentional damage to a protected computer and lacks any factual support that would make the claim plausible.[4] Legal conclusions do "not give rise to

---

Cincinnati policy expired. Paragraph 139 contain only allegations regarding unauthorized access to data and says nothing at all about any resulting property damage.

[4] In February 2009, Lemko achieved dismissal of Count I of the original Motorola complaint, alleging a violation of the CFAA, on the ground that no damages were alleged.

coverage under the duty to defend." *Hartford Ins. Co. v. Kelly*, 309 Ill. App. 3d 800, 806, 723 N.E.2d 288, 293 (1st Dist. 1999). Further, the computer impairment phrase is insufficient to trigger a duty to defend not only because it is conclusory but also because it is "inconsistent with the larger complaint and the detailed allegations" concerning the insured's conduct. *National Union Fire Ins. Co. v. Absolute Title Servs., Inc.*, No. 09 C 04165, 2011 WL 4905660, at *2 (N.D. Ill. 2011).

Discounting the conclusory computer impairment allegation does not run afoul of the teachings that an insurer cannot avoid its duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations, and that the insurer must defend if any conduct alleged in the complaint falls within the insurance policy, even if those allegations are only a "subordinate aspect" of the complaint. *See Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir.1994). Computer impairment is not a "subordinate aspect" of the allegations concerning misappropriation of Motorola's confidential information; it is no aspect at all. The CFAA claim, the source of the boilerplate recitations of impaired availability of computers found in the only three paragraphs that relate to this issue, includes no allegations whatsoever that Motorola was physically unable to use its computers there are no allegations that the operability or availability of the computers was compromised in any way because of the alleged unauthorized access and copying or transmission.[5] Indeed, Motorola did not even discover the unauthorized access for years and

Thereafter, Motorola re-pleaded the claim solely to preserve it on appeal. Accordingly, after the dismissal of that claim, there was nothing to "defend" and no duty.

[5] Lemko is hard-pressed to argue otherwise, given that in its motion to dismiss Motorola's CFAA claim, it argued—successfully—that Motorola alleged nothing but misappropriation of information in that count:

> Where a trade secret has been misappropriated through the use of a
> computer, such conduct alone cannot show impairment to the integrity or

continued to use its computers in the meantime without any degradation in performance or availability.

The point of a "loss of use" provision like that in the insurers' CGL is to provide compensation when an occurrence prevents the use of undamaged property—such as when accidental damage to a structure prevents a company from physically reaching its computers in order to carry on its business, *see, e.g., Manpower, Inc. v. Ins. Co. of Penn*., 732 F.3d 796 (7th Cir. 2013), or when a crane collapses in front of a restaurant, blocking access to it, *Eljer Mfg. Inc. v. Hiberty Mut. Ins. Co*., 972 F.2d 805, 810 (7th Cir. 1992) (explaining with this hypothetical example that language "loss of use of tangible property which has not been physically injured or destroyed" covers "injury that is not 'physical' because there is no physical touching of the tort victim's property."). But so far as the record in this case reveals, Motorola had complete access to, and the use of, its computers at all times; the facts alleged in the TAC do not establish that the conduct alleged interfered in any way with Motorola's possessory rights, *Lyons v. State Farm Fire and Cas. Co*, 349 Ill. App. 3d 404, 412, 811 N.E. 2d 718, 726 (5th Dist. 2004), to its equipment. What Motorola alleged it lost was not the use of its equipment but the value associated with its exclusive rights in its intellectual property and other confidential

---

availability of data, a program, a system, or information…. Motorola has merely alleged that the Defendants downloaded, uploaded and transferred valuable Motorola proprietary trade secrets and confidential information for their own benefit by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information. (Amended Compl., ¶¶53, 77, 90) Not only are these allegations insufficient as a matter of fact, they are also insufficient as a matter of law as the Northern District has held in several cases that similar allegations were insufficient to establish damages under the CFAA.

*See* Mem., No. 08 C 5427, Dkt. # 57 at 10-11. The district court agreed that "[t]he only harm Motorola has alleged is the disclosure to a competitor of its trade secrets and other confidential information." Mem. Op., No. 08 C 5427, Dkt. # 75, at 14 (Kennelly, J.).

information stored on the computers. As Lemko itself repeatedly states, the underlying complaint must be read as a whole in order to assess its true nature, no matter the labels used to characterize the allegations. *American Family Mut. Ins. Co. v. Roth*, 886 N.E.2d 1149, 1156 (Ill App. Ct. 2008). There is no way to fairly read the Motorola complaint as seeking relief for loss of use computer equipment; the allegations of theft and repurposing of the electronic data comprising proprietary trade secrets and confidential information is the basis for every claim.

There is a second substantial reason that the coverage for property damage under the CGL policies does not give rise to a duty to defend. Even were there some plausible, if negligible, "impairment" of Motorola computers alleged, it was not caused by an "occurrence" as that term is defined in those policies. An "occurrence" is an accident. Under Illinois law, "for purposes of insurance coverage claims, an accident is an unforseen occurrence, usually an undesigned sudden or unexpected event of an inflictive or unfortunate character." *West American Ins. Co. v. Midwest Open MRI, Inc.*, 989 N.E.2d 252, 260 (Ill. App. Ct. 2013) (internal quotation marks and citations omitted). The focus must be on whether the injury is expected or intended by the insured, not whether the acts were performed intentionally. *See id.* Lemko believes that this latter qualification saves its claim, arguing that the Motorola complaint alleges intentional acts but not the intentional infliction of particular injury upon Motorola. Here, however, there is no way to meaningful distinguish between the intentional acts—stealing—and the injury—loss. The natural and ordinary consequences of an act do not constitute an accident under an insurance policy. *Milwaukee Mut. Ins. Co. v. J. P. Larsen, Inc.*, 956 N.E.2d 524, 531 (Ill. App. Ct. 2011); *Stoneridge Development Co. v. Essex Ins. Co.*, 382 Ill. App. 3d 731, 751, 888 N.E.2d 633, 652 (2008) (even "if the person performing the act did not intend or expect the result, if the result is the rational and probable consequence of the act, or, stated differently, the natural and ordinary

consequence of the act, it is not an accident."). If a consequence is "not the rational and probable consequence of the intended act" but instead is "unintended and unexpected," it is an "accident" and therefore an "occurrence." *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 378–79, N.E.2d 1082, 1094 (Ill. 2007).

That is not this case. On the face of Motorola's complaint, its losses from the misappropriation of trade secrets and confidential matter cannot be said to be "accidental" on the part of the insured.[6] *See West American*, 989 N.E.2d at 260; *Steadfast Ins. Co. v. Caremark Rx, Inc.*, 835 N.E.2d 890, 898-900 (Ill. App. Ct. 2005) (construing policy covering negligent acts). The complaint is replete with allegations that the Lemko defendants' misconduct was knowing and intentional, and the supporting facts leave little room for an inference that the defendants could not have expected the injuries alleged to be the result of their actions.

For the same reason, then, the CGL policy exclusions for "expected or intended injury" also apply to the events underlying the Motorola complaint and bar coverage. This exclusion is for "property damage which may *reasonably be expected to result from the intentional or criminal acts of the insured* or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended." The Motorola complaint sounds in deliberate fraud and theft by the defendants by accessing Motorola's confidential information and trade secrets and transferring it to Lemko, in violation of Motorola policy, the engineers' employment agreements, and in at least one instance, criminal law. The italicized portion of the policy exclusion therefore applies, and this is an independent

---

[6] There is no material dispute in this case as to the identity of the "insured," which comprises both Lemko and employees acting within the scope of their employment. Lemko does not argue that acts by the individual defendants are not intentional acts of Lemko; to the contrary, it seeks coverage for every named Motorola defendant.

basis to reject Lemko's argument that the defendants owed a duty to defend based on allegations of property damage.

**B.      Advertising Injury Liability**

As set forth above, both insurers' policies cover "advertising injury" liability, similarly defined. The policy definitions are not identical, but they are not sufficiently distinguishable to warrant a different analysis; Lemko does make any argument based on particular wording in either policy that might merit different treatment.

Lemko argues that the Motorola complaint alleges an advertising injury based on copyright infringement. The insurers argue that coverage does not apply under the plain language of the policies; they also argue that three exclusions—for "knowing violation of rights of another," for "breach of contract" and for "infringement"—preclude coverage.

Lemko states in its brief that its "advertising injury liability claim is based solely on the offense of infringement of Motorola's copyright in Lemko's advertisement." Mem., Dkt. # 122 at 10.  That refers to paragraph (g) of the "offenses" that constitute advertising injury under the policy: "Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Lemko primarily relies on two paragraphs of the Motorola complaint:

> Paragraph 137, in which Motorola alleges that "[o]n at least one occasion, the words 'Copyright © 2001, Motorola, Inc.' were removed from a Motorola source code file and the otherwise identical source code file was transferred to Lemko without the copyright notice and with an instruction that the attached files could be used to update Lemko code."

> [and]

> Paragraph 308, in which Motorola alleges that "Lemko has infringed and continues to infringe said copyright, by copying the copyrighted Motorola source code, removing Motorola's copyright notice from the source code, and using the copyrighted source code as part of its own source code without Motorola's permission to do so."

Mem., Dkt. # 122 at 11. Lemko also cites paragraphs of Motorola's complaint that refer to marketing activity or trade show appearances by Lemko defendants, at which they allegedly attempted to sell Lemko products that used Motorola's proprietary trade secrets and confidential information. Motorola Compl., Case No. 08 C 5427, Dkt. # 473 ¶¶ 123.8, 124, 126, 127.[7] Lemko therefore argues: "Broadly and liberally construing them as this Court must, these allegations sketch a claim that the copyrighted infringement of the Motorola source code relates to Lemko's marketing and promotional dealings."

Cincinnati retorts that the Motorola complaint does not claim that Lemko infringed Motorola's copyright in an "advertisement" as defined by the policy—"a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters," including "a publicity article." Cincinnati further invokes the "infringement" exclusion under the coverage for personal and advertising injury, which bars coverage for: "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights"; however, "this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress, or slogan." Cincinnati also invokes its exclusion for advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" and another exclusion for advertising injury "arising out of a breach of contract."

The Court agrees with Cincinnati that the Motorola complaint does not allege that Lemko infringed its copyrights in any Lemko "advertisement." It is true that the Motorola complaint

---

[7] At least some of the allegations in these paragraphs relate to conduct that occurred outside the insurers' respective policy periods, but it is not necessary for the Court to parse out time-barred claims.

asserts in general terms that Lemko used proprietary information it repurposed from Motorola in products that it marketed but that does not equate to "advertising" within the meaning of the policy. Motorola's allegations pertain to the theft and use of the technology *in Lemko products*, not in any "advertisement." Advertising a product that, in turn, incorporates misappropriated or infringing content, is not the same as an advertisement that *itself* infringes a copyright by disclosing the copyrighted content. *See, e.g., Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1223 (9th Cir. 1996) (holding that "the advertising activities must cause the injury— not merely expose it"); *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1014, 1033 (N.D. Ill. 1998) ("Winklevoss imagines that its product demonstrations to potential clients must have revealed trade secret information—since Lynchval alleges that 'mere use of the program would enable a competitor to much more quickly develop a competing product.' But no wrongful disclosure allegations appear in the complaint."). As Cincinnati argues, it would make no sense for Lemko, which hoped to profit from its use of the stolen information, to publish that proprietary information—primarily source code—to the public or any market segment, and, indeed, the Motorola complaint does not allege that that occurred.

Lemko's argument boils down to its contention that it cannot be ruled out, based on Motorola's allegations, that at some unknown time or place, "Lemko represented that its source code was its own," rather than stolen, copyrighted source code of Motorola. Mem., Dkt. # 113 at 13. Speculative possibilities do not give rise to a duty to defend, s*ee Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 808 (7th Cir. 2010), but in any case, Motorola does not allege that it was harmed by any such representation; instead, its injuries stem from the misappropriation and infringement itself. Lemko may have misrepresented the provenance of the source code when "marketing" its products, but it did not publish the proprietary source code (or

any intellectual property or trade secrets) itself. Lemko therefore has no claim for advertising injury liability.[8]

Lemko fares no better with its claim of advertising injury liability coverage under the Federal policies, under which, "advertising injury" is defined as: injury, other than bodily injury, property damage or personal injury, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their: copyrighted advertisement; or registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title." Advertisement is defined in the policy as "an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services."

Thus, the Federal policy did not trigger a duty to defendant based on advertising injury. Moreover, Federal too establishes that its exclusion for "expected or intended injury" bars coverage. The exclusion applies to property damage or advertising injury arising out of an offense, committed by or on behalf of the insured, that was "intended by the insured; or would be expected from the standpoint of a reasonable person in the circumstances of the insured" to cause the property damage or advertising injury. Just as the parallel Cincinnati exclusion applied, so too does Federal's.[9]

---

[8] Even if such a claim could be gleaned from the Motorola complaint, coverage likely would have been barred by one or more of the policy exclusions that Cincinnati relies upon. The exclusions for "knowing violation of another's rights" and for "intellectual property" violations appear particularly apt, but the Court need not decide the issue absent an arguable "advertising injury" to begin with.

[9] Federal also has an intellectual property exclusion to its CGL coverage for property damage and advertising injury "in any way related to any actual or alleged: assertion; or infringement or violation by any person or organization (including any insured) of any intellectual property law or right, regardless of whether this insurance would otherwise apply to

## C.     Wrongful Acts Liability

Finally, Federal alone covered Lemko and various individual insureds under a D&O policy for injuries caused by certain wrongful acts of corporate representatives (who included both executives and employees). Lemko argues that the Motorola complaint alleges a broad array of "wrongful acts" so as to trigger coverage under the D & O policy. Federal argues that the intellectual property exclusions in the D & O policy bar any coverage for liability arising from the Motorola lawsuit. Comparing the policy language with the Motorola complaint, the Court has little difficulty concluding that the exclusion applies and bars coverage.

The exclusion for intellectual property is quite broad. It excludes liability coverage for claims "based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets." Lemko contends that several claims from the Motorola complaint—for usurpation of corporate opportunity, tortious interference, and civil conspiracy, *see* Mem., Dkt. # 93 at 10-11—cannot reasonably be said to fall within this exclusion,[10] but each of those counts in the Motorola complaint sets forth a theory of liability "based upon" or "arising from" the core factual allegations of misappropriation of proprietary trade secrets and confidential information. *See Citizens Ins. Co. of Am. v. Uncommon, LLC*, 812 F. Supp. 2d 905, 910 (N.D. Ill. 2011) (holding that IP exclusion cannot be avoided "by the mere fact that unfair competition, deceptive

---

all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation." The exclusion applies unless the injury " is caused by an offense described in the definition of advertising injury; and does not arise out of,  give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any intellectual property law or right, other than one described in the definition of advertising injury." Federal relies on this exclusion, too, but the Court does not address it, having already concluded that there was no coverage for advertising injury under the facts as alleged in Motorola complaint.

[10] Lemko does not argue that any other claims or conduct asserted in the Motorola complaint fall outside the IP exclusion.

trade practices, tortious interference, and unjust enrichment claims, as a general matter, can and usually do arise from conduct having nothing to do with trademark infringement"). Any claims brought under a nominally non-IP legal theory are covered by the exclusion if the claim would not have arisen but for the IP claims. *Id*.; *see Nautilus Ins. Co. v. 1452-4 N. Milwaukee Avenue, LLC*, 62 F.3d 818, 822 (7th Cir. 2009) (holding, under Illinois law, that even if independent legal claims arise from separate duties, an insurance policy exclusion applies to any "intertwined claims" that do not cause "separate or independent compensable injury"). Taking Lemko's reliance on the usurpation claim for example, Lemko's insistence that the alleged "attempt to status up and operate Lemko as a competitor and usurp certain business opportunities," (Mem., Dkt. # 93 at 11) as alleged in the purportedly independent claims (usurpation, tortious interference, civil conspiracy, and CFAA), is in fact directly contingent on the misappropriation of Motorola's technology. According to Motorola's complaint, it was the misappropriation that even allowed for the development of competing Lemko products.

To the extent that Lemko bases its argument on the premise that "confidential information" means something different than "trade secrets," and therefore falls outside of the IP exclusion, the distinction is not convincing. The TAC expressly alleges that "the Motorola proprietary trade secrets and confidential information" described in the complaint "are statutory 'trade secrets' protected by the Illinois Trade Secrets Act." TAC ¶ 148. Thus, Lemko's effort to premise a duty to defend on a claim that the TAC alleges misappropriation of merely confidential information is completely at odds with the express allegations of the TAC. In any event, the IP exclusion applies to "misappropriation of ideas or trade secrets," and the Motorola complaint's internal definition of "confidential information" fits comfortably within the scope of that broad phrase. *See* TAC ¶¶ 37-47 (defining terms and describing steps taken to keep

"confidential information" secret). While Lemko chastises Federal for failing to distinguish between trade secrets and information that is merely confidential, it commits the more egregious sin in ignoring the concept of misappropriation of "ideas" altogether, failing to offer any argument at all as to why a policy provision that excludes claims for the misappropriation of ideas does not easily encompass any taking of intellectual property or other proprietary information.

Instead, Lemko attempts to tease out of every count of the Motorola complaint a theory of relief that *could* apply even without the alleged theft of proprietary information constituting "trade secrets." *See* Mem., Dkt. # 108 and 4-5. Even putting aside the fact that it ignores the breadth of the policy exclusion, this exercise is futile; the complaint premises each count on the same core factual allegations that include the misappropriation of ideas and trade secrets, so there are no claims that are not "based on" or "arising from" the misappropriation, and Lemko does not show that Motorola alleged any injury independent of the misappropriation. *See 1452-4 N. Milwaukee Avenue, LLC*, 62 F.3d at 822.

### D. Bad Faith

In Counts IV and V of its complaint, Lemko alleges bad faith against the insurers for failing to appropriately investigate Lemko's claim for coverage and interpreting their policy language unreasonably and erroneously. Compl., Dkt. # 1-2 at 10-12. The bad-faith cause of action is a creation of the Illinois Insurance Code, 215 ILCS 5/155, which allows for attorney's fees and statutory damages where an insurer's defense or delay in settling is "vexatious and unreasonable." Based on Illinois case law, the Seventh Circuit has defined four instances in which an insurer's conduct is *not* vexatious and unreasonable: (1) "there is a bona fide dispute concerning the scope and application of insurance coverage"; (2) "the insurer asserts a legitimate

policy defense"; (3) "the claim presents a genuine legal or factual issue regarding coverage"; or (4) "the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citation omitted). In short, claims under § 155 cannot be successful if there is no coverage, or even if there is a *bona fide* dispute about whether coverage exists. In this case, given the Court's ruling on the merits of the insurers' duty-to-defend arguments, which were communicated to Lemko by letter before this lawsuit, the Court must conclude that as a matter of law there was at least a *bona fide* dispute over coverage. Therefore, judgment is proper for the defendants on Lemko's § 155 claims and there should be no penalties or shifting of fees pursuant to that statute.

\* \* \*

For the foregoing reasons, the Court denies Lemko's motions for partial summary judgment and grants the defendant insurers' motions for summary judgment. The insurers had no duty to defend and did not act in bad faith. Accordingly, judgment will be entered against the plaintiff and in favor of the defendants on all counts of the complaint.

Date: September 30, 2014

_____
John J. Tharp, Jr.
United States District Judge